**Roy MARSHALL, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 35545.

Court of Criminal Appeals of Texas.

April 10, 1963.

H. R. Rolston, Lufkin, for appellant.

Leon B. Douglas, State's Atty., Austin, for the State.

DICE, Commissioner.

The conviction is for murder; the punishment, life imprisonment.

The evidence was undisputed that appellant killed the deceased by shooting him with a pistol, the homicide occurring at a motel in the city of Lufkin.

It was shown by the state's testimony that the deceased occupied a room at the motel with his wife and small child. The room was rented from Mrs. Willie Renfro, who operated the courts. On the night before the killing, appellant was discovered near a window of the deceased's room. At such time, appellant was in a drunken condition. The deceased and his wife proceeded to take him to the police and, after filing a complaint against him, he was placed in jail. The next morning, as the deceased and his wife were packing their car to leave, appellant, who had been released from jail, came to their cabin and stated that Mrs. Renfro blamed him for their leaving. The deceased replied that they did not blame him. Appellant went to Mrs. Renfro's cabin, which was locked. When she would not let him in, he unlocked the door and went inside. Mrs. Renfro was then heard to cry out for help, in a loud voice. Thereupon, the deceased, who was packing his car, proceeded to go inside Mrs. Renfro's cabin, grab appellant by the shoulders, and throw him outside.

While appellant was lying on the ground and the deceased was standing nearby talking to him, appellant produced a gun and fired three fatal shots which struck the deceased in the chest.

The issue of self-defense was raised by the evidence and submitted to the jury. The deceased's wife, who witnessed the shooting, testified that her husband first tried to kick the gun out of appellant's hand and that when the first shot was fired he started stepping backward.

Appellant testified that when he shot the deceased, the deceased was coming toward him and it appeared that he was about to do him bodily harm.

Appellant complains of testimony given by Sheriff Leon Jones in which he related certain statements made to him by Mrs. Willie Renfro when he arrived upon the scene some ten or eleven minutes after the shooting. Sheriff Jones testified that after he arrived and had placed appellant in the custody of two deputies, he proceeded to Mrs. Renfro's cabin and that Mrs. Renfro, who at the time was very excited, said to him:

"Leon, if you all don't take Roy and keep him he is going to kill some more of us."

Mrs. Renfro also said:

" * * * he has wanted to kill somebody *every* since he shot at Bourbon and now he has killed * * *".

Quoting further from the witness's testimony:

["Who is Bourbon?] A Bourbon is her husband.

["Q All right. Go ahead?] A She said he has killed this boy and it would have been me if he hadn't *of* stepped between us.

["Q All right. Did she make any further statements?] A Yes, she said that she couldn't keep Roy away from her place, that he had worked there previously and that while he was working there *that* he made pass keys to all of her buildings and that everytime she got a customer there and he thought a woman was there that he tried to get into the apartment where she was."

Appellant objected to the testimony on the ground that the statements made by

Mrs. Renfro to the sheriff were outside his presence and hearing and were therefore hearsay.

It was the state's contention, and the court so ruled, that Mrs. Renfro's statements were a part of the res gestae and admissible as an exception to the hearsay rule.

In 18 Tex.Jur., Sec. 182, pages 297–298, under the title: Evidence—Criminal Cases, in treating the subject of res gestae, it is said:

"One of the prerequisites of a res gestae statement is spontaneity * * If the declaration was instinctive and was made under the active influence of the transaction, it is admissible. But if it be only the narration of some former occurrence, and not a spontaneous outcry or statement concerning the thing then done, it is not admissible."

See, also, 24 Tex.Jur.2d, Sec. 579, page 99, et seq., for further treatment of the subject.

In Holman v. State, 92 Tex.Cr.R. 364, 243 S.W. 1093, this court, in holding certain declarations made by a defendant's wife after the shooting of the deceased inadmissible as res gestae and other statements made by her at the time admissible as such, said:

"Res gestae can never go beyond the facts of the transaction as they spontaneously express themselves through the agency of the acts or declarations of some participant in such transaction. Narration of past events, not so connected with such transaction as to illumine same, is not res gestae. Expressions of personal feelings and opinions, when other than the reflection of the acts or conduct of a party to the offense, would not seem ordinarily to be admissible. To make admissible any statement or act occurring after the transaction has ended, it must be shown by the party offering such testimony, or by the facts in evidence, that the person so speaking or acting was so affected, or is so affected, by the transaction as to render likely the spontaneity of the utterance or act offered, and to exclude the idea that same was or is a mere narration of past events."

While Mrs. Renfro's statements to the sheriff which were directly connected with the shooting and tended to explain the transaction were admissible as a part of the res gestae, her statements that if he did not take appellant away he would kill some more people, that he had wanted to kill someone since he had shot at her husband, and that he made pass keys to the apartments where there were women, were narrations of past events and expressions of her opinion, which should not have been admitted in evidence. The sheriff's testimony relating such statements was harmful to appellant and its admission in evidence requires a reversal of the conviction. See Furrh v. State, 168 Tex.Cr.R. 299, 325 S.W.2d 699, in support of the conclusion reached herein.

Upon another trial, inquiry with reference to certain unrelated clandestine conduct which appellant may have had with a woman should not be made of him.

The judgment is reversed and the cause is remanded.

Opinion approved by the Court.